# CIRCUIT COURT OF BALTIMORE CITY

Filed December 22, 1888.

## PHIPPS
## VS.
## WORTHINGTON.

*Edward Otis Hinkley, Frederick W. Story, Marshall & Hall, John Gill, Jr., Samuel Snowden, H. C. Gaither, John* and *David Stewart* and *G. H. Williams* for plaintiffs.

*Michael A. Mullen, Robert F. Brent, Charles H. Stanley* and *D. S. Briscoe* for defendants.

DENNIS, J.—

In 1882, Patrick Kennedy and Arreanah Kennedy, his wife, executed to one John Delcher a lease of a certain lot of ground lying in what is now Baltimore City, for the term of ninety-nine years, subject to the annual rent of forty shillings, with the usual covenants by the lessors for renewal from time to time forever.

The amended bill in the case was filed in 1885, by parties claiming the leasehold interest by virtue of certain mesne conveyances from Delcher the lessee, against a number of named defendants, who the bill alleges claim an interest in various ways to a part of the reversion, and also against the unknown heirs of certain other parties who, it is alleged, likewise claim an interest in other parts of the reversion; and the prayer for relief asks:

1st. That the Court take jurisdiction of the case, and construe the several indentures, marriage settlements, acts of attainder, escheat warrants, &c., which are more fully set out in the bill, and under which the several

defendants claim, so as to ascertain who are in fact the parties entitled to the reversion.

2nd. That it will then decree against the parties so ascertained to be entitled to the reversion, that they shall execute a renewal of the original lease in accordance with its covenants.

3rd. That an order of publication may issue against certain of the defendants who are non-residents, and also against the unknown heirs of certain other parties; and

4th. As auxiliary to the relief already prayed, an injunction is asked to restrain the prosecution of an action of ejectment already instituted in the Court of Common Pleas by certain of the defendants, until the issues involved in the present case are disposed of.

To this bill a demurrer has been filed, and is sought to be sustained mainly upon three grounds:

1st. Because in a suit to enforce the specific performance of a contract (in this case, the covenant for the renewal of the lease), the bill must show upon its face *with certainty* the proper parties defendant, and no others; so that the Court may see that those proceeded against are legally bound, and are competent to do that which it is asked to compel them to do;

2nd. Because a suit to enforce the specific performance of such a contract is a proceeding *in personam*, and hence no decree can bind non-residents who are made parties only by publication.

3rd. Because of laches, on account of the delay in instituting the proceedings for renewal.

Before considering these grounds of demurrer, there is another objection to the bill, which must be adverted to. Ch. 154 of the Acts of 1886, provides that whenever the lessee named in a lease containing a covenant for perpetual renewal "shall have retained uninterrupted possession of the demised premises for twelve months *after the expiration of such lease hereafter expiring*, or *for twelve months after this Act takes effect* where any such lease has heretofore expired, it shall be *conclusively presumed*, with reference to said demised premises, where possession shall have been retained as aforesaid, and in favor of the lessee and those claiming under him, that a new lease of said demised premises was executed prior to the expiration of said lease, by the lessor therein named or those rightfully claiming under them, to the lessees, for such additional term, and upon the conditions, &c., contained in the original lease." This Act went into effect on the 1st day of April, 1886.

I think it very clear, from its terms, that the Act has no application to those of the defendants, who had already, prior to its passage, brought their action of ejectment for the recovery of the demised premises; but all those defendants who had not prior to its passage, or within twelve months thereafter, brought their actions, are directly within its terms; and if the Act is a valid exercise of legislative power, so much of the bill as relates to this class of defendants is bad, because, in seeking a renewal of the lease, it simply asks the Court to compel the defendants to do that which by the terms of the Act, the Court is bound to *conclusively presume* has already been done. But it is urged that the Act is unconstitutional as to all the defendants, because it violates the contract of the original lease.

The law in regard to legislation of this character is fully and clearly stated by Judge Cooley in his work on constitutional limitations, on p. 367 et. seq. He says: "It must be evident that *a right to have one's controversies settled by existing rules of evidence is not a vested right*. These rules pertain to the remedies which the State provides for its citizens, and generally in legal contemplation they neither enter into and constitute a part of any contract, nor can be regarded as being of the essence of any right which a party may seek to enforce. Like other rules affecting the remedy, must therefore at all times be subject to modification and control by the Legislature. * * * But the Legislature has no power to establish rules which, under pretense of regulating the presentation of evidence, go so far as *altogether* to preclude a party from exhibiting his rights."

Now, it will be observed that the Act in question simply prescribes a period, after which it shall be conclusively presumed that a new lease has been executed in favor of the

lessees, unless in the meantime the lessors, by their action of ejectment or otherwise, have disturbed their possession. It is substantially, therefore, in fact, although not in terms, an Act of limitations, requiring the lessors to bring their suit for the recovery of the demised premises within twelve months from the date of the expiration of the lease, or from the passage of the Act. Our statute in regard to sealed instruments, which says no "bill obligatory, &c., or other instrument under seal, shall be offered in evidence after the lapse of twelve years from its date"; the several statutes in England, shortening the period of title by prescription (see Best on Ev., p. 481 et seq.), particularly Lord Tenterden's Act, which says that "after the lapse of thirty years the title of the party in possession shall be absolute and indefeasible"; are similar instances of legislation, which have always been held to be based upon sound legal principles. So that no matter what the words of the Act may be, whenever its effect is to regulate, or impose new conditions upon the exercise of, the *remedy*, it is held not to impair the *obligation* of the contract. But, under pretense of changing the remedy, or making a new period of limitations, the *Legislature* has no right to pass a law which will *wholly prevent* a party from having any remedy upon his contract. An Act, prescribing a new period of limitations, must always allow a reasonable time for the enforcement of contracts in existence at the time of its passage, if it is made applicable to such contracts. Thus, in the case of the State vs. Jones, 21 Md., a statute was passed shortening the period of limitations upon constables' bonds from twelve to five years, from their date: it was held that the Act was constitutional against the plaintiff in that case because he had five months after its passage in which he could have brought his suit, although, before the new Act, he was entitled to six years longer in which to bring it under the old Act. The Court held that five months was a reasonable time within which the Legislature might require the suit to be brought. In the Act under consideration, the Legislature has allowed a period of twelve months from its passage, within which those of the defendants who had not already brought their suit might do so; and certainly no Court could say that such a period is so unreasonably short, as to substantially deprive them of their remedy, and thus render the Act unconstitutional.

The Court has felt called upon to express thus at some length its opinion upon this Act, although it was not relied upon by either side in argument, because it covers a part of the case, and seemed to indicate a line of policy on the part of the Legislature in regard to the renewal of leases of this character, of great public importance. For, it is manifest, that, without the aid of this Act, in cases where the rent reserved is but nominal, or too small to have been the subject of conveyance or of being devised, and where in consequence it passed only by operation of law from the original lessor to his numerous heirs at law, a renewal of the lease would be almost impossible, owing to the difficulty of finding out, for the purpose of making them parties defendant, all those who might be entitled by descent from a lessor of ninety-nine years ago.

The bill is bad then, on the demurrer as to so much of it as asks relief against those who have not brought their action within twelve months from the passage of the Act, because as to them the Act of 1886, Ch. 154, applies, and by it the Court is bound to conclusively presume that what the bill prays against them has already been done. Is it good as against those defendants who had already brought their ejectment before its passage, and as to whom the Act does not apply? I will consider the three grounds for the demurrer in the inverse order in which they have been stated.

1st. Because of *laches*, about twelve years having elapsed prior to the filing of the bill. In view of the difficulty of finding out the numerous descendants of the original lessors, who executed the lease over a hundred years ago, I do not think the doctrine of laches can be invoked in this case. The plaintiffs, in this respect, have not only not been wanting in due diligence in the effort to discover these descendants so as to make them parties, but the numerous defendants whom they have succeeded in bringing before the Court show that they have pursued their work in this direction with the highest diligence and unwearied industry.

2nd. The second ground of demurrer is that the bill fails to disclose upon its face, with certainty, the proper parties who are competent and proper to execute the renewal of the lease, in accordance with the rule laid down in Lee vs. Worthington, 61 Md.

By the Act of 1886, Ch. 151, it is declared that in suits for the renewal of these ninety-nine years leases the title shall pass by *decree.* Hence, the reason for the rule prescribed in Lee vs. Worthington, which requires that parties who are proper and necessary to take part in the renewal of the lease shall be made parties defendant, so that the Court may see that they are the right ones to make the deed of renewal, no longer applies. Since this Act, a deed being no longer required to be executed by the defendants, there is no reason why those who are brought within the jurisdiction of the Court, and properly decreed against, should not be bound by the decree, irrespective of others whose rights may still remain unimpaired. This seems to have been the rule acted upon by the Court of Appeals in the subsequent case of Bratt vs. Woolston, among the unreported cases in 66 Md.

3rd. Because some of the parties are non-residents, and cannot in a suit of this character be bound by notice by publication. (This question of non-residence was also raised by a plea by certain of the defendants, but for convenience sake it may as well be considered here).

The Act of 1886, Ch. 151, which provides for the title by decree, also provides for notice to non-residents, &c., in cases of this character, by publication. I think this provision valid, while a suit for the specific performance of the covenant of renewal in a lease, is, strictly speaking, a suit *in personam,* while the parties defendant are required to execute a new lease in accordance with the terms of the contract in order to vest a new leasehold interest in the lessees; yet, when the legislature has provided that a *title should pass by decree* of the Court (and the Legislature has an unrestricted right to provide as to the mode of passing title to real estate within its jurisdiction), it binds non-residents who have notice of the proceedings by publication, equally with those who are thus proceeded against in cases of partition and the like.

The Court is, therefore, of the opinion, that the demurrer, which goes to the whole bill, must be overruled; as, so much of the bill as relates to those defendants who had already instituted their actions of ejectment, prior to the passage of the Act of 1886, Ch. 154, is good.